(Clark County, Ohio, Probate Court.)

HAYES, GREEN & CO. v. D. E. MOORE et al.

---

*Proceedings in aid of execution—*

A receiver will be appointed under sec. 5483-5484, Rev. Stat., where it is shown that the debtor has fraudulently or suspiciously fraudulently transferred his property to others, who hold and claim to own the same, when there is a strong possibility that if a receiver were appointed, some of the property could be recovered and money realized therefrom applied on the creditor's judgment.

A debtor cannot give away his property unless he retain amply sufficient to pay all his debts. He must be just before the law will allow him to be generous.

---

ROCKEL, J.

The evidence in this case fails to disclose any property in the possession of the defendant to which he claims ownership, or any property in the possession of others belonging to him, but what the person in possession claims ownership.

The evidence however. does disclose the fact that after the indebtedness of the plaintiff was incurred, that the defendant took out stock in various corporations in the name of his daughters, and that for a nominal consideration he sold some of his property to other persons. The question therefore is, whether the evidence adduced is sufficient to warrant the appointment of a receiver to recover the property thus claimed to have been fraudulently transferred, and convert the same into money and apply it to the satisfaction of the plaintiff's judgment.

Judge Okey, in White v. Gates, 42 Ohio St., 112, lays down the law very succinctly to govern this kind of a proceeding when he says: "And the claim of Mrs. White, that the money was a valid gift from her husband, was one which she was entitled to have tried, in regular form, by a court of equity, clothed with authority to hear and determine as to the rights of the respective parties, and to enforce the decree in the manner usual in such courts. The proceeding in the Probate Court was not such suit, or a substitute for it, but a proceeding in rem, designed to appropriate the property of the judgment debtor in the hands of a third person, to the payment of the judgment, where the person having possession of the property asserts no claim to it, and voluntarily assents to such appropriation.

And while the judge may order the person having the property, to deliver the same to a receiver, although the person so having possession claims to own it, the judge has no power to enforce the order as contempt, however plain it may seem to him that such claim of ownership is wholly unfounded; but the receiver must resort to the ordinary remedy by action. In so holding, we are supported by Union Bank v. Union Bank, 6 Ohio St., 254; Edgarton v. Hanna, 11 Ohio St., 323.

This court therefore having no right to enforce any order except by action at law, that might be made herein upon persons claiming property in their possession, and having no power to adjudicate upon the rights existing therein between them and the defendant, D. E. Moore, the

question presents itself whether the evidence adduced in this court, in order to warrant the appointment of a receiver in such cases, must be such that if presented to a court of competent jurisdiction having power to adjudicate and determine the rights in and to the property existing between the said D. E. Moore, defendant, and his said daughters to others, would warrant such court of competent jurisdition in finding that such property was fraudulently transferred, and rightfully as to these creditors belonging to the defendant: Or whether it would be sufficient if the evidence showed a strong possibility that such transactions were fraudulent.

It seems to me that a strong probability will be sufficient. Of course, the order ought not be lightly made. The court ought to believe that if the receiver would pursue the persons claiming the property, in a court of competent jurisdiction, that there would be a strong probability that he would recover something which could be applied on the plaintiff's judgment.

The plaintiffs in such cases having established the justness of their claim in a court of justice, ought to be enabled, through the receiver, to recover any property of the defendant, and apply the same to the satisfaction of their claim.

Such would seem to be the true spirit and just design of the statute under which these proceedings are brought. Is the evidence, then, in this case sufficient to warrant the appointment of a receiver?

In the latter part of January, 1891, the plaintiffs and defendants were in partnership in the fruit commission business in Springfield, Ohio. They dissolved partnership in January of that year, to take effect on the 9th of the following February.

The plaintiffs received, among some other things, as a part consideration for their interest, the defendant's notes for some six hundred dollars, one hundred of which, being the first note due in 90 days after it was made, was paid. Some of the remainder of these notes were not paid, and constitute the foundation for the judgment in this cause.

Among other things the plaintiffs transferred to defendant, D. E. Moore, when the partnership was finally dissolved on February 9, 1892, was $1,000.00 of stock in the East Tennessee Land Company.

D. E. Moore continued in business until June, about four months, when he quit, $1,500.00 in debt. He says he lost the money, but in what particular way the evidence does not disclose.

Within a month after Moore bought out the plaintiff, he surrendered this stock of the East Tennessee Land Company and had it re-issued one-half, to-

wit: $500.00 to each of his daughters, Tillie and Dora.

Moore testifies as follows, in reference to this transfer: "Q. What was done with that stock in the East Tennessee Land Company A. I let my daughters have it. Q. Now, then, what do you mean by that "I let my daughters have it? What do you mean by that, did you give it to them? A. Yes, sir. Q. What daughters did you give it too? A. To Tillie and Dora."

It appears on cross-examination of the defendants and the daughter, made eight days afterwards, that this stock was given to the daughters to pay them for work done at their home.

Transfers of this kind between members of the family are always closely scrutinized. It may be true that the transaction was all fair and just, but it is suspicious.

According to their own testimony, no express contract was ever entered into as to how much per day, week or year, they were to have for such services—no account was ever made or kept by them against their father. They were still at home, as they always had been, receiving its advantages and comforts.

Tillie still has her stock; Dora, when her father asked her for her's, without any consideration or security for its return, gave it to him, and he pledged it to secure a debt due on some fixtures he was using in his business; this adds more suspicion.

We next find that at about the middle of May, following, the defendant purchases $1,000.00 worth of stock in the Pine City Lumber Company, of Georgia. This stock is also taken out in the name of his daughter, Dora. It was paid for largely, as Mr. Painter testifies, by Mr. Moore in produce from his commission house. There is nothing in evidence to show that Dora ever paid anything for this, or that she has any claim on it other than a mere gift to her. A little while after this, we find that Moore sells the horses, wagons, etc., used in the business, and worth perhaps $400 and $500, for one dollar, to one Rubsam, upon the understanding that Rubsam was to give them back to Moore whenever he, Moore, wanted them.

This was the boldest kind of a fraudulent transaction, and one deserving the severest censure from a court of justice. It is sufficient in itself to cast a cloud of suspicion over all the transactions of the defendant in the disposal of his property.

At the very time he thus transferred this stock to Rubsam, he knew he owed this plaintiff $500.00, with not a dollar's worth of property remaining in his hands to pay it.

When Moore first was called in court in this case, Rubsam still had these horses. Since that time, and before the nature of

the ownership of Rusam was developed, the horses have disappeared, even to the knowledge of Moore. It seems that Rusam's honesty is about on a par with Moore's.

From the books which are in evidence but upon which little reliance can be placed, from the fact that neither the defendant nor counsel, are able to tell anything about them, it appears that at the time Moore purchased plaintiff's interest in January, 1891, the firm was worth $2,792.43.

There is no evidence that Moore had any other property than his interest in this firm, which it is fair to presume was equal in value to what he paid plaintiffs for their interest, to-wit, about $1,200.00. Ater he had purchased plaintiffs' interest, he continued the business about four or five months. During that time he had placed $500.00 of the East Tennessee Land Company stock in his daughter Tillie's name; $500.00 of the same stock and $1,000.00 of the Pine City Lumber Company of Georgia, in Dora's name, and for $1.00, transferred $400.00 worth of horses, etc., to Rubsam, in all $2,400.00.

Is there any wonder that when he quits he was $1,500.00 in debt. In Crumbaugh v. Kugler, 26 S., 374, it was held that a person largely indebted cannot give away his property without amply providing for the payment of his debts * * *. Such a gift is never upheld unless property is retained clearly and beyond doubt to pay all the donor's debts. Treating all these transfers as gifts, the defendant did not retain sufficient property to begin to pay all his debts. Treating them as sales, the evidence very strongly indicates that they were made to hinder and defraud Moore's creditors, and thus, under the Statute of Frauds, are void. A debtor must be just before the law will allow him to be generous.

We next find Mr. Moore, in December, 1891, engaged in the Fruit Commission business again, under the name of D. E. Moore & Co., Agent.

The active persons in this firm were the defendant and Rubsam, the person to whom he had previously for $1.00, transferred the horses, etc. They claimed that they were doing business for Stella Moore, another daughter of the defendant.

But Stella Moore put nothing in the business, nor did anything about it. It was in fact the business of D. E. Moore. All that Rubsam put into the business was the horses and wagons, which were given him for the nominal consideration of $1.00.

The fixtures that were in use were paid by Dora's $500.00 of stock in the East Tennessee Land Company.

These fixtures are yet undisposed of. Nobody seems to claim them, Moore testifying that they belong to the Fruit Commission Company, and Harris of that Company, saying that they held no claim on them, etc.

The evidence of Mr. Moore in reference to all these transactions is extremely vague and indefinite. It shows a want of knowledge with his business that is not explained He has either been duped himself, or has been and is seeking to dupe others The court is of the opinion that the evidence is sufficiently strong in this case to warrant the appointment of a receiver to collect whatever may be collected on this stock now held by the daughters Tillie and Dora, the horses, etc., held by Rubsam, and the fixtures in use lately by D. E. Moore & Co., Agents, and an order will also be made directing the parties now holding such stock, etc., to turn them over to the receiver.

It will also be ordered that within ten days the plaintiffs give security for costs in the sum of $50.00.

Summers & Beard, for plaintiff.

J. L. Zimmerman, for defendants.